J-S67002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.L.H.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2203 EDA 2017 |

Appeal from the Decree June 5, 2017
In the Court of Common Pleas of Monroe County Orphans' Court
at No(s):  8 OCA 2017

| | | |
|---|---|---|
| IN THE INTEREST OF: V.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2205 EDA 2017 |

Appeal from the Decree June 5, 2017
in the Court of Common Pleas of Monroe County Orphans' Court
at No(s):  9 OCA 2017

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 06, 2017**

Appellant, S.F. ("Father"), files this appeal from the decrees dated and entered June 5, 2017, in the Monroe County Court of Common Pleas, granting the petition of Monroe County Children and Youth Services ("CYS") and involuntarily terminating his parental rights to his minor, dependent daughter, V.C., born in July 2015, and minor, dependent son, I.L.H.L., born in September 2016 (collectively, the "Children"), pursuant to the Adoption Act,

_____
*   Former Justice specially assigned to the Superior Court.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1] After review, we affirm the trial court's decrees.

The trial court summarized the relevant procedural and factual history as follows:

## I. FINDINGS OF FACT

. . .

4. [CYS] first received a referral on August 5, 2015 that Mother had given birth to [V.C.], who had remained in the hospital due to a premature birth.

5. Two more referrals were received on August 6 and August 11, 2015 with concerns regarding housing, [Mother] not following through with services, and her ability to properly parent because of mental and physical limitations.[2]

6. CYS began working with Mother and provided her with services, such as Justice Works Youth Care and Nurse Family Partnership. Mother was doing well with the help of the supports in place and [V.C.] was discharged from the hospital in the care of Mother.[3]

---

[1] By the same decrees, the trial court also involuntarily terminated the parental rights of M.C. ("Mother") with respect to the Children. Mother filed a separate appeal addressed by a separate memorandum at Superior Court Docket No. 2086 EDA 2017.

[2] Beyond V.C.'s prematurity in weighing three pounds, six ounces at birth, the initial referral expressed concerns related to Mother's mental health, intellectual limitations, domestic violence, and lack of appropriate housing. Notes of Testimony ("N.T."), 5/23/17, at 7-8. The next referrals related concerns regarding Mother's ability to properly parent, suspicions that Mother had a contagious skin condition, and Father's outstanding criminal warrants. *Id.* at 9-10.

[3] Mother reported that she and V.C. would be residing with her mother at a hotel upon release from the hospital. N.T. at 10. Subsequent to another referral related to housing and/or homelessness, Mother again reported that she would be residing with her mother. *Id.* at 12.

7. On August 24, 2015, CYS learned that Mother had re-located back to live with her father and his five other children, that some of those children had lice, and that Mother and [V.C.] were sleeping in one of the other children's room[s].

8. On August 31, 2015, the agency was made aware that Mother had left the residence to move to a third residence.

9. There were also allegations that Mother left [V.C.] alone with [Mother's] (10) year old sibling who had aggressive behavioral issues and that she had missed [V.C.]'s pediatrician appointment.

10. On September 1, 2015, CYS learned that Mother had moved to a fourth residence.

11. Attempts to contact Mother were unsuccessful and she was not in contact with any of her service providers.

12. On September 7, 2015, Mother brought [V.C.] to the hospital due to having possible burn marks on her palms and scalp which ended up being a skin rash. Concerns were that Mother dropped [V.C.] off at the hospital and then left, instead of waiting with the child.

13. Emergency Protective Custody of [V.C.] was requested by CYS and granted by the Honorable Stephen M. Higgins on September 8, 2015 and continued at the Shelter Care hearing held on September 11, 2015.

14. [V.C.] was found to be a dependent child by the Honorable David J. Williamson by Order dated September 21, 2015.

15. Said placement of [V.C.] was reviewed and continued by further Orders of Court dated December 11, 2015, March 16, 2016, June 8, 2016 and November 14, 2016. By Order dated November 14, 2016, [V.C.]'s goal was changed to Adoption.[4]

16. Paternity of [V.C.] was questioned, but a paternity test determined that [Father] is [V.C.]'s father.

17. Neither Mother nor Father have had stable income.

---

[4] Upon review of the certified record, while dated November 14, 2016, the goal change order was filed and entered on November 16, 2016. Neither Mother nor Father appealed the goal change to adoption.

18. [Mother] had filed a Protection from Abuse petition against Father in September[] 2015, which was dismissed after she failed to appear at the hearing.

19. Mother did not have stable housing and spent time living in a tent, then at a motel with [her paramour I.L.] in early October 2015, and then moved to Louisiana in late October 2015 with Father.

20. Mother has mental health issues for which she takes prescribed medication and she has physical limitations with her arm.[5]

21. Father was then arrested in Louisiana in January 2016 for an incident that had occurred previously in Pennsylvania. He was charged with Criminal Attempt – Murder of the First Degree, Aggravated Assault, Recklessly Endangering Another Person and Terroristic Threats with Intent to Terrorize Another and eventually returned to Pennsylvania.[6]

22. On that same day, Mother informed CYS that she was on her way back to Pennsylvania due to Father's incarceration. Mother and Father had no visits or contact with [V.C.] from October 2015 through January 2016 while they resided in Louisiana.[7]

23. Upon Mother's return to Pennsylvania in June 2016, she visited with [V.C.] and began residing again with her [] paramour [I.L.].

24. Mother advised she was expecting her second child and that [I.L.] was the father, even though the timing of the pregnancy indicated Mother became pregnant when she was in Louisiana with Father.

---

[5] Mother suffers from depression and anxiety, and has some paralysis in one of her hands. N.T. at 8, 11.

[6] Father was extradited from Louisiana to Pennsylvania. N.T. at 57-58.

[7] Testimony was presented that Mother and Father sent a package to CYS from Louisiana for V.C.'s foster parents which included a onesie and a pacifier. N.T. at 52. Testimony was additionally presented as to Father's inability to have appropriate contact without harassing Children's foster parents. *Id.* at 52-53.

- 4 -

25. A paternity test determined that [Father] was the father of [I.L.H.L.], [born in September of 2016], and not [Mother]'s paramour, [I.L.], as she had claimed.

26. Emergency Protective Custody of [I.L.H.L.] was requested by CYS and granted by the Honorable David J. Williamson on September 8, 2016 and continued at the Shelter Care hearing held on September 12, 2016.

27. [I.L.H.L.] was found to be a dependent child by the Honorable David J. Williamson by Order dated September 21, 2016.

28. Said placement of [I.L.H.L.] was reviewed and continued by further Order of Court dated December 8, 2016.

29. A goal change hearing on [V.C.] was held November 14, 2016. A goal change hearing on [I.L.H.L.] was held on May 23, 2017 together with the Petition for Termination of Parental Rights.[8]

30. Mother has not completed parenting classes and her visitation has been inconsistent. Mother's last visit . . . occurred on February 15, 2017.

. . .

32. Mother has changed her residence at least fourteen (14) times since August 2015.

33. Mother is pregnant again and expecting twins.

34. Mother stopped all contact with CYS since March 2017.[9]

35. Father has remained incarcerated following his return from Louisiana. He entered a guilty plea to Aggravated Assault and

---

[8] By order dated and entered May 23, 2017, I.L.H.L.'s goal was changed to adoption. Permanency Review Order, 5/23/17. Father does not appeal the goal change to adoption. As Father does not appeal this order, any such claims related thereto are not preserved. Pa.R.A.P. 903(a) (a notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken).

[9] While I.L. or family members cancelled Mother's scheduled visitation on her behalf into March 2017, Ms. Payne testified that she last spoke to Mother on February 15, 2017. N.T. at 76, 79.

was sentenced on November 14, 2016 to not less than twenty five (25) months nor more than one hundred twenty (120) months. He is currently incarcerated at SCI [State Correctional Institution] Mahanoy.

36.  Father had not completed any of the goals outlined in the Child Permanency Plan, including mental health treatment.

37.  Visits are not occurring with Father due to his incarceration and health concerns for [V.C.].

38.  [I.L.H.L.] is placed with [V.C.] in a foster home that is able to provide permanency.

39.  [I.L.H.L.] and [V.C.] are bonded with each other and their foster family.

40.  Foster parents want to adopt [I.L.H.L.] and [V.C.].

Opinion (I.L.H.L.), 6/5/17, at 1-6.[10]

CYS filed petitions to terminate the parental rights of Father and Mother to V.C. and I.L.H.L. on February 3, 2017.  The trial court held a hearing on May 23, 2017.  In support thereof, CYS presented the testimony of Kate Croll, supervisor of the CYS Intensive Unit, and Jennifer Payne, CYS case worker.[11] The Guardian *ad litem*, Lara Kash, Esquire, further presented the testimony of Angela Laubach-Huerta, nurse, Nurse-Family Partnership.[12]  Mother was

_____

[10] While addressing Mother and Father together, the court issued separate opinions for both V.C. and I.L.H.L.  These opinions, however, are substantially similar.  *See* Opinion (I.L.H.L.), 6/5/17; Opinion (V.C.), 6/5/17.

[11] CYS further presented Exhibits 1 through 22, which were admitted without objection.  N.T. at 45, 80.

[12] Court-appointed counsel for the Children, Barbara Fitzgerald, Esquire, was also present and participated in the termination hearing.  Subsequent to the filing of the within appeals, Ms. Kash resigned and Ms. Fitzgerald was substituted as guardian *ad litem*.  Order, 7/12/17.  Notably, when questioned

present in the courtroom and Father was present via video conference from SCI Mahanoy. While both parents were represented by counsel, neither party testified or offered any evidence on their behalf.

By decrees dated and entered June 5, 2017, the trial court involuntarily terminated the parental rights of Father and Mother pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Accompanying these decrees were opinions addressing the trial court's rationale for the termination of parental rights. **See** Opinion (I.L.H.L.), 6/5/17, at 6-12; Opinion (V.C.), 6/5/17, at 6-11. On July 5, 2017, Father, through appointed counsel, filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on August 4, 2017. Pursuant to a Statement Pursuant to Pa.R.A.P. 1925(a) dated and entered July 10, 2017, the court indicated that it had adequately addressed the issues raised on appeal in its opinion submitted with its decrees terminating parental rights. **See** Statement Pursuant to Pa.R.A.P. 1925(a), 7/10/17.

On appeal, Father raises the following issue for our review:

> Whether the [t]rial [c]ourt erred by terminating the parental rights of Father, where there was no clear and convincing evidence that established statutory grounds for termination of parental rights under 23 Pa.C.S.A. [§ 2511](a)(1), (2), (5), (8) and (b), and

---

by the court at the close of the hearing, Ms. Fitzgerald did not express an opinion as to termination given the Children's age and their inability to express their views. N.T. at 111. Ms. Kash, however, offered an opinion in favor of termination. **Id.** at 112.

- 7 -

where termination does not serve the developmental, physical and emotional needs of the children[?]

Father's Brief at 4.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.,* 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc)*. We, therefore, analyze the court's decision to terminate Father's parental rights under Sections 2511(a)(2) and (b), which provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

      (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

      **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

This Court has explained our analysis with respect to Section 2511(a)(2) in the following manner:

      In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). Further, we have clarified that "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative

- 10 -

misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)).

In *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817 (2012), our Supreme Court, in addressing Section 2511(a)(2), concluded that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.* at 328-29, 47 A.3d at 828; *see also In re D.C.D.*, 629 Pa. 325, 346-47, 105 A.3d 662, 675 (2014) (holding that incarceration prior to the child's birth and until the child is at least age seven renders family reunification an unrealistic goal and court within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made). The Court in *S.P.* further stated,

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). *See e.g. Adoption of J.J.,* [511 Pa. 590, 605,] 515 A.2d [883, 891 (1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A.P.,* 944 A.2d [79, 85 (Pa.Super. 2008)](holding termination under § 2511(a)(2) was supported by

mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 616 Pa. at 331-32, 47 A.3d at 830 (footnote omitted).

In the instant matter, in finding grounds for termination pursuant to Section 2511(a)(2), the trial court concluded as follows:

> Section 2511(a)(2) of the Adoption Act provides that parental rights can be terminated if the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical and mental well-being and the conditions and causes of the inability, abuse, neglect or refusal have not been remedied by the parent. Mother and Father's inability to care for the child has not been remedied, and it appears that they cannot or will not be able to do so in the near future.

Opinion (I.L.H.L.), 6/5/17, at 8-9. We agree.

A review of the record supports the trial court's determination of a basis for termination under Section 2511(a)(2). Significantly, Father has been incarcerated since January 2016, prior to I.L.H.L. even being born. N.T. at 41. Father has not seen or had any contact with the Children since that date.[13]

---

[13] Ms. Croll indicated that Father and Mother did send a package from Louisiana, prior to Father's arrest and incarceration, for CYS to forward to foster parents. N.T. at 52. Father additionally had communication with foster parents for an unknown period of time that had to be restricted to email contact from foster parents as his telephone calls were described by Ms. Croll as "bordering on harassing." *Id.* at 52-53. However, despite additionally asking for photographs of V.C., Ms. Payne confirmed that Father has sent no letters or cards to V.C. while incarcerated. *Id.* at 86.

In fact, Father has never even met I.L.H.L., and has only seen and held V.C. on one occasion, at her September 2015 dependency hearing. *Id.* at 54-55.

Although Father had his prison counselor contact CYS regarding visitation with V.C. in June 2016, Ms. Croll confirmed that, prior to incarceration, Father made no effort and/or expressed no desire to come back to Pennsylvania from Louisiana to visit with V.C. or care for V.C. [14] *Id.* at 53, 62, 85. In addition, although Ms. Payne referenced a discussion with Father regarding visitation with I.L.H.L. in January 2016, she indicated that Father requested that visitation not be scheduled until he moved to his "home jail." *Id.* at 73. Moreover, Father acknowledged that he made no request of CYS for any updates regarding I.L.H.L. since his birth. *Id.* at 100.

Father was sentenced to two to ten years' imprisonment. *Id.* at 78, 81, 103; *see also* Petitioner's Exhibit 15. His earliest possible release date is February 2, 2018, but that this date will be difficult to attain due to certain requirements of his sentencing that he must complete prior to release. *Id.* Further, it is speculative whether Father will then, or ever, be in a position to

---

[14] While Father indicated that he additionally sent correspondence with regard to visitation with V.C., visitation was never scheduled due to V.C.'s health concerns. *Id.* at 77-78, 85-86, 97. CYS presented documentation received from V.C.'s doctor opining that visitation at a correctional facility environment was not in V.C.'s best interests medically due to her history of febrile seizures. *Id.* at 86; Petitioner's Exhibits 12, 16.

care for the Children.[15] This prospect is simply unacceptable for the Children, who have been in the custody of CYS for essentially their entire young lives and never in the custody or care of Father. At the time of the termination hearing, V.C. was nearly two years old and had been in foster care since she was approximately six weeks old; I.L.H.L. was eight months old and had been taken from Mother's care at birth.

As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.* As

---

[15] Ms. Croll indicated that Father was not cooperative as to completion of what CYS required of him prior to his incarceration when he was living in Louisiana. She specifically noted that, while Father acknowledged anger and mental health issues, he failed to follow through, despite CYS providing resources. N.T. at 51. Father testified that he was going to pursue mental health treatment in August 2015, after recommended, however, decided not to engage in treatment. *Id.* at 94-95. Nonetheless, Father stated that he is now complying with treatment recommendations in prison. He reported that he is on a treatment block and receiving therapy and medication in his current correctional facility, to be followed by violence prevention and a batterers' group. *Id.* at 94-95.

noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d at 384.

Before we assess the trial court's determination that termination of Father's parental rights would best serve the needs and welfare of the Children pursuant to Section 2511(b), we note that Father presents no argument with citation to relevant authority with respect to Section 2511(b). *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). As a result, Father has waived any challenge to Section 2511(b).

Accordingly, because we conclude that the lower court did not abuse its discretion by involuntarily terminating Father's parental rights to Child, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2017

- 15 -